UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ADAM RUESSLER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BOILERMAKERS-BLACKSMITHS )<br>NATIONAL PENSION TRUST )<br>BOARD OF TRUSTEES, )<br>)<br>Defendant. ) | Case No. 1:20-cv-00128-SNLJ |

### MEMORANDUM AND ORDER

This matter comes before the Court on defendant Boilermakers-Blacksmiths National Pension Trust Board of Trustees' motion to dismiss under Rule 12(b)(6), ECF #7. For the following reasons, the motion is **DENIED**.

### I. BACKGROUND

Plaintiff files this case under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. He alleges defendant, as trustees of the Boilermaker-Blacksmith National Pension Trust (the "Plan"), improperly denied him disability pension benefits. Two counts are made: Count I—a claim for unpaid benefits under 29 U.S.C. § 1132(a)(1)(B); and Count II—a claim for equitable relief resulting from defendant's breach of fiduciary duties under 29 U.S.C. § 1132(a)(3)(B).

The ultimate issue animating these claims comes down to a matter of timing. Plaintiff filed for disability pension benefits on July 17, 2017. At that time, plaintiff admits his application had certain "defects." Namely, plaintiff did not attach a Notice of

1

Award from the Social Security Administration ("SSA")—one of several documents used to authenticate an applicant's claim and, per the Plan, a required step in the claims process. On January 11, 2018, defendant wrote to plaintiff informing him that his application was denied because he "failed to provide a copy of [his] Social Security Disability Notice of Award." By order of an administrative law judge, the SSA determined plaintiff was disabled on February 22, 2018. Plaintiff then appealed defendant's initial denial on February 27, 2018, noting that he was in the final stages of seeking social security disability benefits with the SSA and had just "had [a] hearing before their judge" on November 2, 2017 (the record does not make clear if plaintiff was yet aware of the ALJ's decision just days earlier). Defendant acknowledged plaintiff's appeal on March 5, 2018. Plaintiff forwarded his SSA award to defendant on March 18, 2018—275 days after the initial application. On June 13, 2018, defendant denied plaintiff's appeal, again noting that he had "failed to provide a copy of [his] Social Security Disability Notice of Award *within the 180-day time period allowed*[.]" (emphasis added). In support, defendant specifically quoted Sections 4.09 and 10.01(c) of the Plan, which state in relevant part:

> **C. Disability Pension**
> **Section 4.09. Eligibility for a Disability Pension**. A Participant shall be entitled to a Disability Pension if he is totally and permanently disabled prior to attaining age 65 provided he:
>
> (a) <u>Has been awarded a Social Security Disability Benefit under Title II of the Social Security Act, a Social Security Supplemental Income Award for disability</u>, a Railroad Retirement Annuity because of disability under the Railroad Retirement Act or Canadian Pension Plan Disability benefits offered by the Department of Human Resources and Skills Development Canada (all subsequent references to Social Security

2

>   Disability or Railroad Retirement Disability under this Part C of Article IV shall be interpreted as including Canadian Pension Plan Disability benefits and all substantially equivalent programs and benefits under the Canadian Pension Plan Disability, such as trial work);
>
>   […]
>
>   (d) Has <u>filed a written application for benefits</u> with the Fund Office in accordance with Section 8.01, <u>together with a notice of award of disability benefits from the Social Security Administration or the Railroad Retirement Board.</u>
>
>   […]
>
>   **Section 10.01. Claims and Appeals Procedures.**
>
>   […]
>
>   (c) **Initial Benefit Determination**. Approval or denial of the claim will normally be <u>made within ninety (90) days</u> after the claim has been received by the Plan. If additional time is required in special cases, the claimant will be notified in writing of the special circumstances requiring <u>an extension of time</u> and of the date by which the Plan expects to render the final decision, <u>which will be not more than ninety (90) days from the end of the initial time period</u>. Written notice of the extension shall be furnished to the claimant prior to the commencement of the extension. If additional information is required, the claimant will be notified and requested to furnish the necessary data within the 180-day time period specified by this provision.
>
>   […]

(ECF #1-8, #8-1 (emphasis added)). Based on these provisions, and specifically Section 10.01(c), defendant says it was time-bound to either accept or deny plaintiff's application within 180 days. Because the SSA award was not added to the application until well after 180 days (275 days to be exact), defendant was thus "required"—by both the Plan and federal regulations—to deny it. Defendant notes, for example, that 29

3

C.F.R. § 2560.503-1(f)(1) essentially mirrors the Plan's language in requiring timely benefit determinations within 180 days.[1]

Disputing defendant's reading of these stringent timeliness requirements, plaintiff points out that the "average processing time for a disability claim [is] 463 days"—inferring that protective or conditional filing would be essentially impossible under defendant's 180-day rule. More importantly, because he was in the midst of an internal appeal when he forwarded the SSA award, plaintiff says defendant was required under the Plan's appellate rules to "decide the claim anew" together with "all … documents, record, and other information submitted by the claimant … regardless of whether such information was submitted or considered in the initial benefit determination." In essence, plaintiff says defendant reads the 180-day rule too rigidly and fails to account for the appellate process that allows for an evolving record to cure prior defects.

---

[1] The regulation reads:

> (f) Timing of notification of benefit determination—
> (1) In general. Except as provided in paragraphs (f)(2) and (f)(3) of this section, if a claim is wholly or partially denied, the plan administrator shall notify the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination within a reasonable period of time, but not later than 90 days after receipt of the claim by the plan, unless the plan administrator determines that special circumstances require an extension of time for processing the claim. If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 90–day period. In no event shall such extension exceed a period of 90 days from the end of such initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the benefit determination.

29 C.F.R. § 2560.503-1(f)(1).

4

Theoretically, plaintiff could simply refile his application, as defendant has urged, with the newly-obtained SSA award attached. But, plaintiff counters that the real issue underlying this case is "defendant's knowledge regarding the impending implementation of the [']Funding Improvement Plan['], which decreased the available benefits under the Plan."[2] According to plaintiff, his disability pension benefits can potentially decrease by nearly $2,000 per month depending on whether his claim is treated as one filed in June 2017 (when he initially filed) or some time thereafter (the necessary result of any refiling effort).

## II. ANALYSIS

As noted, the thrust of defendant's motion—and the case at large—is defendant's adamant belief that it was beholden to a 180-day time limit in deciding plaintiff's application for disability pension benefits. Certainly, that general requirement is reflected in the Plan, the regulations, and available caselaw. *See* ECF #1-8, #8-1; 29 C.F.R. § 2560.503-1(f)(1); *Carney v. Int'l Bhd. of Elec. Workers Local Union 98 Pension Fund*, 66 F. App'x 381, 386 (3d Cir. 2003) (noting a "maximum of 180 days" that plan administrators and fiduciaries have to make benefit determinations under "ERISA's implementing regulations").

However, defendant overlooks ERISA's procedures for internal appellate review of the denial of disability pension benefits. Like the Plan at issue in this case, ERISA's

---

[2] Defendant says it is a document known as "Amendment 4," not the Funding Improvement Plan, which works to reduce pension benefits a "noted in the Complaint." Whatever the case, the parties seem to agree that plaintiff was at risk of suffering a benefit reduction and, therefore, "filed this suit."

5

implementing regulations state that a review shall "take into account all … documents, records, and other information submitted by the claimant relating to the claim, ***without regard to whether such information was submitted or considered in the initial benefit determination***." 29 C.F.R. § 2560.503-1(h)(2)(iv) (emphasis added). Defendant acknowledges that plaintiff "timely appealed [its initial] denial [of benefits]," and that appeal was made on the basis of new, emerging evidence: an SSA decision and award that were issued little more than a month after defendant's initial denial of benefits. Though not attached to his notice of appeal, plaintiff managed to submit the SSA award within the appellate proceedings as a whole; indeed, defendant did not deny plaintiff's appeal until 87 days *after* the SSA award was forwarded to it for review.

    The implementing regulations make abundantly clear that the appellate procedure will not be "deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination" unless it provides the claimant an opportunity to submit new documents and records relevant to his or her claim. 29 C.F.R. § 2560.503-1(h)(2); *see also Hughes v. Hartford Life and Accident Ins. Co.*, 368 F.Supp.3d 386, 394 (D. Conn. 2019) (noting a claimant's right to "submit new information" on appeal); *Hall v. Metropolitan Life Ins. Co.*, 398 F.Supp.2d 494 (W.D. Va. 2005) (noting the plan administrator's right to assert "new information" on appeal, so long as it does not constitute a "new reason for claim denial"). This Court has, itself, recognized the leniency of the internal review process in permitting the submission of new documentation. *See Waite v. Sun Life Assurance Co. of Canada*, 2018 WL 10247599 at *2 (E.D. Mo. Oct. 24, 2018) (Limbaugh, J.) (noting plaintiff's ability to submit new

6

documentation during her internal appeal that was not considered in the initial denial of benefits pursuant to Section 2560.503-1(h)(2)(iv)). The appellate process is, thus, thoroughgoing—meeting with the "non-adversarial characteristics" of ERISA's internal review procedures that inure to the benefit of claimants. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 631 (9th Cir. 2008); *see also Hughes*, 368 F.Supp.3d at 398 (claimant and plan administrators must engage in a "meaningful dialogue," even at the appellate stage, in order to meet with the notion of a "full and fair review"). Therefore, because it has not been shown that plaintiff was disallowed from submitting new evidence during the appeal process, even beyond the 180-day period to make an initial determination, defendant's motion will be denied.[3]

### III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that defendant Boilermakers-Blacksmiths National Pension Trust Board of Trustees' motion to dismiss (ECF #7) is **DENIED**.

---

[3] Defendant also challenges Count II of the Complaint by isolating and arguing against five factual allegations that plaintiff says shows defendant breached its fiduciary duties. These five facts work to raise a single claim for breach of fiduciary duty, which plaintiff seeks to remedy through 29 U.S.C. § 1132(a)(3)(B). Because defendant attacks facts, and not the claim itself, and because certain of those attacks clearly relied on defendant's belief that it would win on its initial arguments pertaining to Count I, this Court will not dismiss or otherwise consider in detail the arguments made against Count II. *See McInerney v. CareerBuilder, LLC.,* 2019 WL 6497369 at *3 (N.D. Ill. Dec. 3, 2019) (noting Rule 12(b)(6) motion is not proper to attack "the individual facts underlying a count" as opposed to the total claim itself). Count II is factually supported, states a plausible claim, and will therefore be permitted to proceed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

So ordered this 6th day of October 2020.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE